```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

ROBERT R. RODGERS,            )
          Plaintiff,          )
                              )
    vs.                       ) Civil Action No. 04-1392
                              ) Judge Terrence F. McVerry/
JO ANNE B. BARNHART,          ) Magistrate Judge Amy Reynolds Hay
COMMISSIONER OF SOCIAL        )
SECURITY,                     )
          Defendant.          )

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully recommended that plaintiff's motion for summary judgment (Docket No. 12) be denied, that defendant's motion for summary judgment (Docket No. 15) be granted, and that the decision of the Commissioner be affirmed.

II.  REPORT

Plaintiff, Robert R. Rodgers, submitted the instant complaint on September 10, 2004, pursuant to Section 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's final decision disallowing his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI").

A.   Procedural History

Plaintiff filed an application for DIB on July 24, 2002, claiming that he was disabled as of June 6, 2001 (Tr. 64-

66) and on January 10, 2003, plaintiff applied for SSI (Tr. 81). Plaintiff's applications were denied on November 7, 2002, and on February 4, 2003, plaintiff requested a hearing (Tr. 47-50, 52).[1] A hearing was held on January 28, 2004 (Tr. 35-76), before an administrative law judge ("ALJ") at which plaintiff, who was represented at the time, and a vocational expert ("VE") were called to testify (Tr. 29-44). The ALJ issued a decision dated April 5, 2004, finding that there were a significant number of jobs existing in the national economy that plaintiff was capable of performing and, thus, he was not disabled as defined under the Act. (Tr. 12-19). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on July 7, 2004 (Tr. 4-6). This appeal followed.

The parties' cross motions for summary judgment are presently before the Court.

B.   Factual Summary

The claimant was twenty-nine years old at the time of the ALJ's decision (Tr. 13, 31). He completed the eleventh grade and received a GED in 1992 (Tr. 32). Plaintiff's past work included working at a coal dumping facility moving coal from rail cars into barges, as a water blaster or industrial cleaner at

---

[1]   The record establishes that plaintiff was able to show good cause for filing his hearing request out of time (Tr. 12, 53).

power plants and steel mills, and as a fire and water restorer or home remodeler (Tr. 36-37, 38).  Plaintiff, however, has not worked since May of 1996 (Id.).

At the hearing conducted on January 28, 2004, plaintiff testified that he was unable to work because he cannot sit or stand for long periods of time without his legs going numb and because he's had to commit himself to a mental hospital a few times because of the pain "and everything else that's been going on" and that he can't cope (Tr. 33).  Plaintiff also testified that he doesn't feel right being around other people, that he doesn't come out of his house until he has to and that the only person he talks to is his mother (Tr. 33, 34).  As well, plaintiff allowed that he used to engage in outdoor activities such as hunting and fishing but that he doesn't anymore because of the pain and that he feels hopeless, angry and aggravated all the time (Tr. 34, 35).

Plaintiff testified that he had back surgery in 2001, and has been in pain every day since (Tr. 35).  Although plaintiff acknowledged that an agency doctor reported in 2002 that he could sit for an extended period of time, plaintiff stated that his pain has now gotten more severe and his mobility is limited (Tr. 35-36).

It also appears that while plaintiff was working as a coal dumper he got "smashed" between two rail cars as they were

3

moving and that he still has dreams about the incident which has contributed to his seeking mental health treatment (Tr. 37). Plaintiff maintained that he is unable to work at any of his past jobs because he is unable to put any pressure on his back which causes shooting pain down his legs and spine (Tr. 38). Plaintiff testified that he takes Vicodin for pain, Motrin for inflamation, Effexor XL, Neurontin, Depakote and a muscle relaxer (Tr. 38). Plaintiff stated that the medications made him want to sleep and that he sleeps all day and all night, but also stated that he had reported to Dr. Baumgartel that he had problems sleeping at night (Tr. 38-39).

Plaintiff also testified that he goes to his family doctor once a month for pain medication and to a mental health facility for evaluation and medication (Tr. 40), and that he was serving a period of probation for a recent DUI (Tr. 41).

At the hearing, a VE was also called to testify in response to a hypothetical question involving an individual of plaintiff's age, who had plaintiff's education and work experience, which the VE categorized as unskilled and heavy, and had a residual functional capacity for light work with a sit/stand option and was limited to a low stress job. The VE responded that such an individual could perform a number of jobs which exist in significant numbers in the national economy such as a hand packer, bench assembler and production inspector (Tr.

42-43).

According to plaintiff's medical records, he was in a workplace accident in December of 2000 causing contusion to his right arm, left ribs and thoracic spine (Tr. 121).

Plaintiff was seen by John D. Lehman, M.D., an orthopedic surgeon, on February 1, 2001, complaining of right elbow pain (Tr. 142). Dr. Lehman reported that plaintiff's wrist and shoulder pain were resolved and that an x-ray of his elbow showed no true bone deformity being present other than the lack of a normal carrying angle (Tr. 142). Dr. Lehman gave plaintiff a cortisone shot and kept him on light duty (Tr. 142). In a follow up visit on February 13, 2001, Dr. Lehman found that plaintiff had good motion and strength and no pain with point palpation and returned him back to full work duties (Tr. 141).

In March of 2001, plaintiff returned to Dr. Lehman again complaining of elbow pain and some numbness and tingling at his wrist and running along his ring fingers (Tr. 140). Dr. Lehman gave him another cortisone shot and permitted him to continue his work duties (Tr. 140). In a follow up visit on April 12, 2001, Dr. Lehman reported that plaintiff's elbow pain was resolved but that he was complaining of low back pain radiating into his buttocks and leg (Tr. 139).

On July 13, 2001, plaintiff presented at the Heritage Valley Health System complaining of right elbow pain and lower

back pain which plaintiff alleged he had since January of 2001 (Tr. 124-25). Dr. Sarah J. Dusenbury reported that plaintiff was in no acute distress, that his cervical, thoracic and lumbosacral spines were non-tender, his straight leg raise tests were good and that he had intact sensation and a full range of motion (Tr. 125, 127). Dr. Dusenbury noted that plaintiff was alert, fully oriented, had no anxiety, depression, confusion or agitation and an x-ray of plaintiff's right elbow showed no significant abnormalities (Tr. 127, 130). An x-ray of his lumbosacral spine showed mild degenerative disc disease at the L5-S1 level (Tr. 131).

Plaintiff was also examined by Dr. Robert F. Palguta for back pain in July of 2001 (Tr. 132-33). Dr. Palguta noted that plaintiff indicated his back pain began in April of 2001 and that it radiated down his left leg and usually lasted for about one minute before abating (Tr. 134). Dr. Palguta also noted that plaintiff was in mild to moderate discomfort and his back was non-tender. As well, plaintiff had full motor strength, normal sensation, walked with a normal gait albeit slowly, had no focal neurological deficits and his straight leg raise test was negative (Tr. 135).

Plaintiff returned to Dr. Lehman in August of 2001 for right elbow pain and leg pain (Tr. 138). Dr. Lehman, however, reported that plaintiff had full motor strength and normal deep

tendon reflexes (Tr. 138).  An MRI was performed on September 12, 2001, which showed that plaintiff had a herniated disc at the L4-5 region (Tr. 188).

Plaintiff was treated by a neurosurgeon, Ashvin T. Ragoowanski, M.D., in September of 2001 who noted that although plaintiff complained of low back pain he had no weakness (Tr. 162).  Dr. Ragoowanski reported that an MRI showed that plaintiff had significant central and left sided disc herniation at L4-5 with nerve root compression and in October of 2001 Dr. Ragoowanski performed a laminectomy and discectomy (Tr. 152, 162).  In follow-up reports Dr. Ragoowanski indicated that plaintiff's back pain was "not all that bad" and that he could lift up to twenty-five pounds (Tr. 149-50, 161).

An x-ray of plaintiff's lumbosacral spine taken in November of 2001 showed only a slight osteoarthritic change and an MRI revealed no evidence of recurrent disc herniation (Tr. 160, 186, 187).  In January of 2002, Dr. Ragoowanski released plaintiff to return to light work with no prolonged standing, and limited to lifting twenty-five pounds (Tr. 166).

Plaintiff was seen by Dr. Ida Gagliardi in July of 2002, for continued back pain.  Dr. Gagliardi found that plaintiff was neurovascularly intact, had normal pulses, normal sensation and normal motor strength but noted that he had difficulty changing positions from sitting to standing and

standing to sitting (Tr. 177).  Dr. Gagliardi referred plaintiff to Dr. Ragoowanski who ordered a repeat MRI that showed some degenerative disc disease at L5-S1 and possible recurrent disc herniation at L4-5 (Tr. 177, 183, 185).

In October of 2002, plaintiff was examined by Ira E. Baumgartel (Tr. 189-194).  Although Dr. Baumgartel found that plaintiff's straight leg raising was difficult and that he had a slow gait, he also found no swelling, good pulses, intact sensation, no paresthesias, good motor strength and no muscular atrophy (Tr. 191).  Dr. Baumgartel also noted that plaintiff was six feet eight inches tall, weighed two hundred and eighty-three pounds and smoked two packs of cigarettes a day (Tr. 191).

State agency physician Dilip S. Kar reviewed plaintiff's medical records in November of 2002, and determined that plaintiff was able to lift twenty pounds occasionally, lift ten pounds frequently, and stand/walk for at least two hours and sit for about six hours in an eight hour work day (Tr. 199).  Dr. Kar further found that plaintiff could occasionally perform all postural motions (Tr. 200).

In a Medication Management Report dated February 27, 2003, it was noted that although plaintiff complained of depression and appeared irritable he denied any mood swings or suicidal/homicidal ideations (Tr. 108).  It was also noted that plaintiff had normal appearance, normal motor activity, normal

speech, normal sensorium, no anxiety, normal thought content and flow, normal judgment, normal insight, normal appetite and that he took walks (Tr. 108).

It appears that plaintiff returned for medication management five times in March 2003 each time reporting that he continued to feel depressed and on March 19, 2003, he reported having suicidal thoughts but stated that he "wasn't going to do anything" (Tr. 109-113). Although at one visit or another he was described as being agitated, irritated, angry, unkempt, and with pressured speech his appearance, motor activity, speech, sensorium, behavior, mood, intent and flow of thought, affect and judgment and appetite were generally normal (Tr. 109-113). It was occasionally noted that plaintiff was not sleeping at night and was told to stop napping during the day (Tr. 109, 112, 113).

On April 14, 2003, Mikhail Vassilenko, M.D., reported that plaintiff was non-compliant with medication and treatment and noted that plaintiff had a history of alcohol abuse (Tr. 114).

On August 18, 2003, it was noted that plaintiff was on parole and had recently been arrested for DUI. He reported being depressed and irritable and therapy was recommended (Tr. 117).

On September 16, 2003, Dr. Vassilenko diagnosed plaintiff with mood disorder, not otherwise specified, and alcohol abuse. He again recommended therapy (Tr. 118).

In a daily activities questionnaire dated September 5, 2002, plaintiff indicated that he lived alone, had an eighteen month old puppy that needed constant care, that he is able to prepare simple meals, take out the trash, shop, drive a car, pay his bills and do household chores such as sweep and mop the floors, clean the dishes, dust, clean the bathroom and his basement, and do the laundry (Tr. 98-100). Plaintiff also stated in a questionnaire submitted when he requested a hearing that he attempted suicide on March 19, 2003 (Tr. 106).

Based on this record evidence, the ALJ found that although plaintiff's back impairment is severe, it did not meet or equal the criteria for any of the listed impairments (Tr. 18, Finding Nos. 3, 4). The ALJ further found that plaintiff's allegations regarding his limitations were not entirely credible and that plaintiff has the residual functional capacity to lift no more than 20 pounds, frequently could lift a maximum of ten pound and must have a sit/stand option and low stress work (Tr. 18, Finding Nos. 5, 6). He therefore determined that, despite his limitations and the fact that he could not perform his past work, plaintiff had the residual functional capacity to perform a significant range, albeit not a full range, of light work thereby concluding that plaintiff was not disabled under the Act (Tr. 18, Finding Nos. 7, 11, 12, 13). Thus, the Commissioner, through the ALJ, found Plaintiff not disabled at the fifth step of the

sequential evaluation process (Tr. 12-18).[2]

    C.    <u>Standard of Review</u>

In reviewing the final decision of the Commissioner denying a claim for a period of disability or for disability insurance benefits under Sections 216(I) and 223 of the Act, the question before the Court is whether there is substantial evidence to support the findings of the Commissioner. 42 U.S.C. § 405(g). <u>See</u> <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999); <u>Monsour Medical Center v. Heckler</u>, 806 F.2d 1185, 1190 (3d Cir. 1986), <u>cert</u>. <u>denied</u>, 482 U.S. 905 (1987). Substantial evidence is defined as less than a preponderance of the evidence and more than a mere scintilla; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988); <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999).

The Act defines disability in terms of the effect an impairment has on a person's ability to function in the work place. 42 U.S.C. § 423(d)(1)(A). <u>See</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 460 (1983). A claimant bears the burden of showing not only that he has a medically determinable impairment, but

---

[2]    The five-step sequential evaluation process for disability claims requires the Commissioner to consider, in sequence, whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform any other work in the national economy. 20 C.F.R. § 416.920.

11

that it is so severe that it prevents him from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). See Heckler v. Campbell, 461 U.S. at 460; Petition of Sullivan, 904 F.2d 826, 845 (3d Cir. 1990).

    D.   Discussion

        Plaintiff initially argues that the ALJ erred by not fully evaluating the opinion of the State Consultive Examiner, Ira E. Baumgartel. Specifically, plaintiff points to Dr. Baumgartel's findings that plaintiff had difficulty performing straight leg raises due to severe back pain and that he had a slow gait with a stiff left leg when he walked. In addition, Dr. Baumgartel noted that when he tried to measure plaintiff's station, plaintiff closed his eyes and got nauseated and dizzy and that his back pain, secondary to L5-S1 disc disease, limited plaintiff significantly (Tr. 191-92).

        These assessments, however, do not appear to provide the basis for finding that the ALJ's decision is not supported by substantial evidence. Indeed, we note at the outset that contrary to plaintiff's implication, Dr. Baumgartel did not find that plaintiff's impairments rendered him disabled (Tr. 189-94). Rather, Dr. Baumgartel opined that plaintiff was significantly limited by back pain which appears consistent with the ALJ's finding that plaintiff was unable to perform his past heavy work and that he was limited to a range of low stress light work with

12

a sit/stand option (Tr. 16).

Moreover, not only has the Court of Appeals for the Third Circuit held that even constant discomfort is not necessarily disabling, Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986), but the ALJ found plaintiff's complaints of pain and limitation not fully credible, a finding which plaintiff has not challenged here (Tr. 18).

Further, Dr. Baumgartel is not one of plaintiff's treating physicians nor a back specialist but a consultive examiner whose specialty is internal medicine and who examined plaintiff one time (Tr. 206). As such, his opinion, even if he had found that plaintiff was disabled, is not entitled to any particular deference. 20 C.F.R. §§ 404.1527 (d)(1),(2); 416.927(d)(1)(2). In contrast, it was the opinion of Dr. Ragoowanski that while plaintiff should avoid prolonged standing he was nevertheless able to lift up to twenty-five pounds and perform light work (Tr. 166). As plaintiff's treating neurosurgeon, Dr. Ragoowanski's opinion is entitled to more weight and was properly relied on by the ALJ. 20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5) (2005). Moreover, determinations regarding a claimant's residual functional capacity and whether he or she is disabled as defined under the Act is reserved to the ALJ. 20 C.F.R. §§ 404.1546, 416.946 (2005). Although the ALJ is required to consider the opinions from treating physicians as

13

well as other examining medical sources, the ultimate decision is that of the Commissioner. 20 C.F.R. § 404.1527(e)(1)-(3). See Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1990).

Finally, the ALJ's determination that plaintiff was able to perform a range of low stress, unskilled, light work with a sit/stand option appears to be supported by substantial evidence notwithstanding Dr. Baumgartel's findings. As already discussed, Dr. Ragoowanski found in January of 2002 that plaintiff was able to perform light work and lift up to twenty-five pounds but should avoid prolonged standing (Tr. 166). As well, in July of 2002, Dr. Gagliardi noted that although plaintiff had difficulty changing positions from standing to sitting he otherwise had normal sensation, normal motor strength, normal pulses and that he was neurovascularly intact (Tr. 177). Further, in November of 2002, Dr. Kar determined that plaintiff was able to lift twenty pounds occasionally, ten pounds frequently, could stand/walk for at least two hours in an eight hour work day and sit for about six hours and could occasionally perform all postural motions (Tr. 199-200). Moreover, plaintiff himself allowed that he was responsible for a puppy that needed constant care, that he is able to prepare simple meals, take out the trash, shop, drive a car, pay his bills and do household chores such as sweep and mop the floors, clean the dishes, dust, clean the bathroom and his basement, and do the laundry (Tr. 98-

100). In addition, as of October of 2002, plaintiff reported that he was not taking any medication for pain (Tr. 190).

Finally, the VE testified that an individual with plaintiff's residual functional capacity that enabled him to perform a range of light work and which involved a low stress tasks and a sit/stand option could perform a significant number of jobs in the national economy such as a hand packer, bench assembler and production inspector (Tr. 42-43). See <u>Chrupcala v. Heckler</u>, 829 F.2d 1269, 1276 (3d Cir. 1987) (Finding that a vocational expert's testimony constitutes substantial evidence where the hypothetical question posed included all of plaintiff's significant impairments supported by the record).

The plaintiff nevertheless argues that the Commissioner failed to show that there are jobs existing in the national economy that plaintiff could perform taking into account both his exertional and non-exertional limitations. Specifically, plaintiff points to the fact that the ALJ found that plaintiff was limited to performing less than a full range of light work and argues that because the jobs identified by the VE exist in a full range of light work the Commissioner has not met her burden.[3]

---

[3]   It should be noted here that while the ALJ found that plaintiff was not capable of performing a full range of light work, he did find that the range of light work that plaintiff was capable of performing was "significant" (Tr. 16, 18).

Plaintiff, however, has not provided any support for his assertion that the jobs identified by the VE require a full range of light work or that they exceed plaintiff's residual functional capacity as found by the ALJ.  Indeed, Burnett v. Commissioner, 220 F.3d 112, 123 (3d Cir. 2000), cited by plaintiff does not stand for such a proposition and his general reference to the Dictionary of Occupational Titles, Vol. I, Fourth Ed., Rev 1991, does not further his position.  To the contrary, the listings for hand packager or inspector and bench assembler indicate only that the physical demand requirements for these jobs are in excess of those for sedentary work and should be rated as light work.  Id. at §§ 559.687-074, 706.684-042.

Moreover, review of the record demonstrates that the hypothetical question posed to the VE accurately stated plaintiff's functional limitations.  Specifically, the VE was asked to assume "a residual functional capacity for light type work in terms of physical demand with a sit/stand option, and from a nonexertional standpoint, it would be of low stress" (Tr. 42-43).

Further, the ALJ's decision clearly reflects his understanding that plaintiff's impairments caused exertional and non-exertional limitations so that he was unable to perform a full range of light work and that the Medical-Vocational Guidelines were, therefore, to be used only as a framework (Tr.

16

16-17). Thus, neither the VE's opinion nor the ALJ's decision appears to be based on a finding that plaintiff was able to perform a full range of light work and plaintiff's argument to the contrary is without merit.

Summary judgment is appropriate where there are no disputed material issues of fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ. P. 56 (c). In the instant case, there are no material issues of fact in dispute and it appears that the Commissioner's determination is supported by substantial evidence. For this reason, it is recommended that plaintiff's motion for summary judgment (Docket No. 12) be denied, that defendant's motion for summary judgment (Docket No. 15) be granted, and that the decision of the Commissioner be affirmed.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond

thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                      Respectfully submitted,

                                      /s/     Amy Reynolds Hay
                                      AMY REYNOLDS HAY
                                      United States Magistrate Judge

Dated:   24 October, 2004

cc:  Zenford A. Mitchell, Esq.
     P.O. Box 99937
     Pittsburgh, PA 15233

     Jessica Lieber Smolar
     Assistant United States Attorney
     United States Attorney's Office
     700 Grant Street
     Suite 400
     Pittsburgh, PA 15219